IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MICHAEL JOSEPH GRAY, #1202061 | § | |
| VS. | § | CIVIL ACTION NO. 9:05cv105 |
| CHUCK BISCOE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Michael Joseph Gray, an inmate previously confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The cause of action was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on May 9, 2005. It concerned a use of force incident that occurred at the Polunsky Unit on March 15, 2004. On July 12, 2005, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Coordinator Chip Satterwhite and Nurse Tom Seliga were present during the hearing in the event the Court wanted testimony about information contained in the Plaintiff's prison records.

The Plaintiff testified that the incident began in the chow hall.  He had an infected wisdom tooth, which made it hard to eat.  He had to eat on one side of his mouth.  Officer Brothers told him to quit playing with his food and eventually told him to leave.  They exchanged words, and the Plaintiff left the chow hall.  Officer Luna ordered the Plaintiff to face the fence and place his hands against the fence.  Officer Luna conferred with Officers Brothers and Thompson.  Officer Luna then told the Plaintiff to get on his knees and apologize to Officer Brothers.  The Plaintiff refused to get on his knees.  The three officers conferred again.  An officer in the picket told him that they were going to get him.  Officer Luna came back.  The Plaintiff placed his hands behind his back and was handcuffed.  Officer Luna then grabbed the Plaintiff and started assaulting him.  The three officers repeatedly struck and kicked the Plaintiff.  The Plaintiff testified that he received a busted head, a scratch on the side of his face, fractured ribs which made it difficult for him to sit up for two months, an injury to his right hand which made it difficult for him to move it, black eyes that were swollen shut, a swollen nose and various knots and bruises.  The Plaintiff noted that Lt. Hutto and Sgt. Primrose were in attendance during portions of the incident and they did not stop it.  An officer at the desk likewise failed to take steps to stop it.  The Plaintiff testified that he sued Warden Biscoe and Director Dretke because they are in charge of the officers and are responsible for them.

The Plaintiff testified that he filed a Step 1 grievance on March 19, 2004.  He received an answer and filed a Step 2 grievance.  He gave the Step 2 grievance to an officer, but he never received a response.  His Step 1 grievance and response were attached to the Step 2 grievance.  He resubmitted Step 1 and Step 2 grievances in June, 2005, which were returned as untimely filed.  The Plaintiff testified that he received a lie detector test as part of an investigation by the Office of the Inspector General.

Regional Grievance Coordinator Chip Satterwhite testified that he did not have a record of the Plaintiff's original Step 1 and Step 2 grievances. He reviewed the second set of grievances and confirmed that they were not processed because they were untimely filed. He testified that the report by the Office of the Inspector General reveals that the Plaintiff passed the polygraph test and four officers refused to take a polygraph test. Six officers were disciplined as a result of the incident.

Nurse Tom Seliga reviewed the Plaintiff's medical records. He testified that the medical records show that the Plaintiff received a laceration to the right eye, an abrasion to the left eye, redness in his rib area and an abrasion on the nose. X-rays were subsequently taken, which revealed no fractures of the ribs. Nurse Seliga testified that the Plaintiff's ribs could have been sore even though there were no fractures.

Chip Satterwhite testified that in preparing for the hearing, he noticed that a disciplinary case still remained on the Plaintiff's record for assaulting an officer. He contacted Warden Biscoe, who had the disciplinary case expunged. Another disciplinary case was modified. Good time in the amount of 365 days was restored, along with the Plaintiff's classification.

The Plaintiff authorized the Court to review his prison records. The report from the Office of the Inspector General confirms that five officers were disciplined. Officer Brothers died before his disciplinary hearing. He died in an accident while on the way to another unit for in-service training.

In reviewing the merits of the case, the Court notes that the Supreme Court has emphasized that the core judicial inquiry in an excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court additionally emphasized that a use of force

claim has subjective and objective components. In other words, a court must consider whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8.

Several factors are important in making an assessment of the situation. The claimant must allege and prove there was an "unnecessary and wanton infliction of pain." In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.* The Fifth Circuit has instructed the courts in this circuit to consider these five factors in analyzing excessive use of force claims. *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). The Supreme Court additionally emphasized that the concept of what constitutes cruel and unusual punishment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. at 8 (citations omitted).

In the present case, the Plaintiff's testimony gives rise to an inference that the force that was used was not necessary to maintain or restore discipline. He was restrained at the time force was applied, and it appears that Officer Luna used force because the Plaintiff would not get on his knees and apologize. Officers Brothers and Thompson assisted Luna assault the Plaintiff. The Plaintiff has alleged facts that are sufficient to state a cause for excessive use of force against the officers. The Court notes, however, that Officer Brothers was not included in the Order to Answer since he is deceased.

The Plaintiff has sued a number of prison employees who were not involved in the use of force incident. He sued Lt. Hutto, Sgt. Primrose and unidentified officers for failing to intervene. He sued Chuck Biscoe and Doug Dretke because they are responsible for their officers as Warden and Director. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in the use of force incident. The only way they could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is met. The claims against these Defendants fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Officer Samuel R. Luna and Officer Paul E. Thompson. It is further

**ORDERED** that the claims against the remaining Defendants are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **28** day of **July, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE